All right, and the attorneys for the affluence and the athletes will step forward, please, and introduce yourselves. On behalf of the athletes, I'm Kathleen Hopkins, and I represent Liberty Mutual Insurance in Horsfield. Okay, fine. If you would have a seat, please. I'd just like to point out that these microphones do not amplify, so the people in the back of you can't hear a word. And probably unless you speak up, we can't either, so if you could keep your voice up, that would be great. Please record. I will err on the side of speaking too loudly. That's perfect. Very good. Justice Kuczynski, Justice Hyman, Justice Mason, thank you for scheduling our argument. They are not routine anymore, and these are complicated matters both factually and legally. We have two appeals. There is some overlap, but there are significant differences in each of them, and I will take up the first case, the 3550 case, which involves Monarchia Medicos, pain and suffering, and one of the treatment centers on Archer Avenue, and, of course, the appellees, the defendants there were Liberty Mutual, and it's insured, Morris Audemars. If I had one central theme to what I'd like to discuss today, it would be central, not incidental, and by that I mean medical providers under the contracts that were before the trial courts, under the statutes that had been passed by the legislature, even under the insurance policies, as those insurance policies engraft, necessarily, the Workers' Compensation Act. Medical providers are central, not incidental. The reason I say that is because in 2005, four years before something called the Affordable Care Act was a piece of national legislation, the Illinois legislature passed something that I will call, for the time being, the Workers' Affordable Care Act. Some people might want to call it the Insurer's Affordable Care Act. Some people might want to call it the Employer's Affordable Care Act, but for reasons I'm going to explain in a minute, the Workers' Compensation System is designed to benefit the workers, and that's why I call the 2005 enactment a Workers' Affordable Care Act. And what does that act provide in general? One, for the first time in Illinois history, it limited the amount of money a doctor could charge a patient. Two, it guaranteed that if that doctor agreed to treat a patient on reduced fees, it guaranteed a payor. And three, it guaranteed a prompt payment if a medical provider was willing to work on a statutory reduced fee. Now, if the Workers' Affordable Care Act had been put into the insurance code, right next to Section 155, or if it had been put into some aspect of the labor code, we would not be talking about how to distinguish this case from Zerk or why Zerk was wrongly decided. But Section 8.2 of the Workers' Compensation Act, which is, I am calling, the Workers' Affordable Care Act, was put inside the Workers' Compensation Act. Okay? My argument to this court is, the fact that the legislature put it into the Workers' Compensation Act, instead of the insurance code next to Section 155, or instead of under various provisions of the labor code or anywhere else in the combined statutes, the fact that it's in the Workers' Compensation Act did not make medical providers incidental. Medical providers are central to the workers' compensation system. But you, first of all, you concede that in order to rule in your favor on this appeal, we have to disagree with the Zerk decision. Yes, correct. And second, that we have to disregard the fact that the Workers' Compensation Act is generally deemed to be for the benefit of workers and not medical providers, and that the legislature's decision not to, as you suggest, separately put this provision in the insurance code or elsewhere doesn't mean anything. I disagree with your second and third points. I don't. I wholeheartedly agree that the core of the Workers' Compensation Act and the core of what I call the Workers' Affordable Care Act is the patient. Okay? And that you can see that from the Illinois Supreme Court McMillan case, which was decided in 1998, seven years before the statute was decided, 20 years before the Zerk case was decided, and you will not see the word McMillan anywhere in the Zerk opinion. And what does McMillan hold? It holds that the refusal to pay an injured employee's medical expenses is contrary to the purposes of the Workers' Compensation Act. It's as contrary as an employee's refusal to compensate the employee for lost earnings. I understand your point, and let's say I sympathize with the position that your client finds itself in, but the question here is how does your client vindicate that interest? Is it a direct action against the insurance company, which is rare for a non-policyholder, or is it some other method that is available to your client to achieve the result that you're advocating? Well, you've hit the nail on the head. We have a right, a statutory right, and we have no remedy. You have no remedy. If we ruled for the sake of argument, we follow Zerk, and we rule on the seven causes of action that are before us in both cases against you, is it your position that you have no alternatives? There is nothing out there that you can do to recover. In these two cases alone, there is almost $100,000 worth of— That's not my question. My question is— I'm trying to answer your question. We have no remedy to collect interest. We may have a remedy to collect unpaid medical bills under these settlement agreements, but we have no remedy whatsoever to collect statutory interest on unpaid medical bills. Why do you say that? Because Zerk said that ostensibly, as it relates to the doctors, Section 8.2d is oratory. We have no place to go to collect—we can't collect at the courts. Let's hypothesize. Okay, you're a medical provider, and you've got a patient who hasn't paid his bills, for whatever reason. And so you have a right to collect from the patient. You sue the patient, okay? You say you haven't paid your bills. The patient says, wait a second. I'm covered under this as a work-related injury. It's my employer who has the obligation to pay these bills. In comes the employer, and the employer says, wait a second. I brought insurance to cover these medical expenses, and Liberty's the bad guy, and in comes Liberty. Right. Why do you not get interest, attorney's fees, everything else in that? Well, right now we have an appellate court and one of the circuit court judges who said, I can't get attorney's fees under Section 155. We have an appellate court that says I have no right to enforce the interest claim. Okay, so— No, you're talking—what Markham Medicals v. Zerk said was there's no direct action against Zerk. It didn't say you can't—the employee can't reduce the workers' compensation award to judgment, sue the employer for not paying the medical bills if the employer agreed to pay them in the settlement agreement, and that the employer can't third-party in the workers' compensation carrier and accomplish it that way. I agree. I agree. That is a possibility. I will argue to you that that is not a practical or complete remedy, which is what the guidelines are for recognizing a private right of action. Understand this. Patient comes in day one. In this case, Mr. Martinez came in in the fall of 2009. He gets treated. Within 60, 90 days, he files a workers' compensation claim. The doctors are statutorily prohibited from billing the patient. From collecting? You bill? No. You bill? You can't call a bill. You can't even call a bill. You can send him advice, more likely his attorney, but you can't send him a bill. No, you can't send him a bill and you can't say, hey, come on, pay, your employer isn't paying. You can't do that. Correct. I understand that. So then we get to the practical realities, which are the first bill goes to the employer because you don't know who the insurer is. The employer sends it to the insurer. The insurer sets up a claim and says, bill us. These cases, unlike the class action cases, bring to light the practical realities, and they're hard realities, but what really happens in the real world is the insurance company writes every check to every doctor when it gets paid. Employers are a simple pastor, and there's a reason for that. There's three ways you can be an employer in this state. One, you can buy insurance and insure everything. You pay premium. You don't want to hear from the doctor ever again. Two is you self-insure and you hear from the doctor all the time, and three is you get an indemnity, which is a lot like two. But these are cases in which, number one, all the employers said, I signed up for version number one. I agree to buy insurance, so this is somebody else's problem. Then you come to the fact that the Illinois legislature, right before the Affordable Care Act was passed, said the insurance company that decides to write policies in the state of Illinois for workers' compensation has to insure all the liabilities, all the risks, everything, and the insurance policies say we're the ones responsible. You can't pay the bill. We have to pay the bill. In 5.0, in the Morse, you didn't attach the insurance policy. I don't think it's in the record. You might attach that. I quoted liberally. I attached the foreign policy, and I quoted liberally. I don't think it's in the record. But I will answer your question. In the 5.0 case, the insurance policy itself is not in the record. We quote the standard language, I believe. But in the 5.0 case, the policy itself is not in the record. It is attached to the third amendment complaint in the 5.1 case. I apologize for that. In answer to Justice Mason's question, that there is a potential alternative way to make this claim, like bringing the gentleman into a judgment and so forth, and you were trying to answer, I still don't understand from your answer why that is not practical. That wouldn't be the appropriate way to do this, rather than trying to shoehorn something that may appear when you have to stretch in order to read what you're saying in because of the vegetabra. Simple one-word answer, which I'll then explain. Delay. This is 2018. This is medical treatment that was done in 2009. In the 5.0 case, we have sued both the employer and the insurer. Judge Sherlock said you can have the employer, you can't have the insurer. He said, sorry, it's inconvenient, but it's a hopscotch. So we get a judgment against the employer. That employer, either at that time or later, is third-partisan. It's a long tail to get paid when the statute says that the employer-slash-insurer will pay within 30 days. That's why you're filing a suit in the first place. And in that way, it may not be as long as this is taking because of all these causes of action over all these years and having run up the appeal. So it could be very quickly because there aren't a lot of quite open questions. It seems once you proceed along the lines that Justice Mason is discussing, and then as long period of time as that, you're collecting on it, that they bring in liberty. And the longer liberty waits, the more interest accumulates, and it's a pretty hefty amount. Or the more plaintiffs they wear down. Or the more interest that they... I mean, it's not like you can get attorney's fees, too. No. No? The only way I can get attorney's fees is if I can persuade you that Garcia v. Lavalette should be the law in this district and that, in fact, if somebody waits 10 years to pay a medical provider pursuant to, ostensibly, the rights they have under insurance policy, we are being entitled to get our attorney's fees. But we have no right to attorney's fees under Section 8.2 of the Workers' Compensation Act. And I have great respect for Counsel for Liberty and Mutual. I wouldn't be bringing a 137 action against them. I think that this is a very expensive process that the legislature thought was supposed to be simple and try to attract medical providers into the community of people who would treat injured workers with cost payment, and they're not getting it. And it's not clear to me. I understand there's the possibility, and I don't want to be back here in a year or two or three. There's the possibility, if we go back down and refile Judge Sherlock, he says, well, Zerk says you don't have a cause of action against Liberty Mutual, but you can collect interest from the employer. I'm sure, maybe Counsel will clarify, they would take the position that Zerk says you don't have a private right to action as to interest as to anybody? Then who would get the interest in the attorney's fees? Well, that's... It's an unjust enrichment claim where a contract implies more. I'm sorry, Judge. Unless your imaginary discussion with Judge Sherlock is more, that is, that you do have a right to that interest in the attorney's fees. If Judge Sherlock decides that Zerk does not bar the claim against the employer, we still have a long tail, we have no right to attorney's fees, and we're looking at another appeal. Which is why... Well, once you have that... Huh? Once you win that, you... I'm talking about... I still have kids in college. So, when you're looking from... I wanted to start at the statute because the statute and the insurance policy are two sides of the same coin. But until the 2005 enactment of a new statute, you really don't have an implied right. You're not a third-party beneficiary of insurance policies. The Myers case was rightly decided under pre-2005 facts. It's wrongly applied to when the statute is engrafted into the insurance policy. And since 1937, I think it's the Carmack decision, the Supreme Court has said, when you have a legislative enactment about insurance, that that enactment is engrafted into the policy itself. Which is why you see this dovetail between where the policy says, we, the insurer, will pay, you, the employer, will not pay, we will accept all direct and primary responsibility. So, to come back to Justice Mason's question, why are we bothering these nice people? Because they wrote an insurance policy that said to the employer, we're in. And when it said it to the employer, it also said it to us. It didn't say it to us in 2000. It said it to us in 2008, 9, 10, 11, When the medical providers agreed to treat patients under a statutory scheme that engrafted the terms of that policy, and made liberty mutually direct, why didn't the legislature put that somewhere in this statute? I mean, you're saying they did all this for the employee who was injured. And they were trying to help the providers, to pay quickly and do the work of taking care of the patient. But, why didn't they say some words? There's nothing in it. We're trying to figure out what the remedy is. You're saying they created something, there's no remedy, as a result of a lack of legislature, saying there's all here? Well, I did say to you on this, in 1954, Illinois Supreme Court case, where the passage of a series of legislative acts results in confusion and consequences where the legislature may not have contemplated, and I italicize this, the courts must construe the acts in a way to reflect the obvious intent of the legislature and to permit practical application of the statutes. All I have now is an impractical application. What you're asking for is a direct action against an insurance company by a non-policy holder. That's extraordinary. So, to get to that extraordinary result, don't we need more than the fact that the statute was amended? Well, in the first instance I would say no, but in the second instance, as I told you, the statute and the policy were two sides of the same coin. I would say, yes, the Garcia case has nothing to do with the statute. The Garcia case is a passenger riding in a car. The driver is being insured. The passenger gets injured, and lo and behold, the insurance company, although the policy says nothing about this particular person, the policy says we'll make direct medical payments to anyone covered under the policy. And the poor passenger didn't get paid, and his doctor didn't get paid, and he had to sue essentially under his driver's policy, and the appellate court found that, yes, that passenger, because it says your medical bills will be paid, that passenger is an intended beneficiary. But that passenger was an additional insured under the policy. It's not as if the medical providers are additional insureds. Well, if you have a statute, Section 4, that has said for maybe as far back as 100 years, if you buy insurance, the insurance has to cover all of the liabilities arising under the Act. Then they are, you can use the term additional insureds. I hear that as something, when you buy a policy, and then you pay an additional premium for additional insureds. This is one policy, one premium for all the liabilities arising under the Workers' Compensation Act. Did those liabilities expand over the years? Yes. Did the legislature intend for those obligations to expand over the years? Yes. Did that expansion include interest? Yes. One of the possible things, in this case, you were talking about practical application of the statute. Yes. If we were looking for the most practical application of the statute, we have all these theories to pick from. Which is your best theory, and why should that be? It may not be that you have seven ways to get there. What happens if there is only one way to get there? Which of those one, and I know we will talk about the other case, but it is kind of hard. Fair enough. You are asking me to split a coin, but I will do it, because I want to answer your question. If you put a gun to my head, and you just did, and said, do you want to private write under the statute, or do you want to be found an intended beneficiary under the insurance policy, I would say I want to private write under the statute, which engrafts the policy. But I do believe they are two sides of the same coin. And the way to get it private write under the statute would be? Yes. It is to find that medical providers are central, not incidental, to the workers' compensation, the overarching workers' compensation scheme, and that they have no remedy since what happens in the industrial, that is not called the industrial commission. What happens in the Illinois workers' compensation commission is there are only two, by statute, there are two parties of interest. There is the injured worker, and there is the employer. Now, you have the legal section that it is actually the employer there. It is not. It is the insurance company. But the one party that has statutory rights, but has no remedy, or even a seat at the table in the Illinois workers' compensation commission, are the medical providers. They are beholden to the worker and or the worker's lawyer, and there are a number of other practical realities as to whether or not a claim for interest is made, whether it is paid, whether it is enforced, all sorts of things. Since they have no seat at the table in the workers' compensation commission, there are only remedies, certainly. Okay, so let's say we are thinking about pursuing this for purposes of argument. So a private right of action under statute. If we go under where do we find that you get interest in attorney fees? I am not asking for attorney fees. The way I get attorney fees is if you find that the statute necessarily applies to the insurers, and that the insurers have violated section 155 when they go to tenure. Well, only if you go to 155. Correct. The poor idea, as you said, is the statutory scheme, crop payment. One thing that causes more crop payment is when you have to sue and get attorney fees, which is a lot more than the interest, that is going to prompt an insurer to probably not be so utilitarian. So when you say the only way to get there is 155. Yes, under the law as it is. But you have another practical problem with why don't you just sue the employers and wait until the employer is the third party in the interest? Well, in order to do so, the cases go longer. When the cases go longer, the attorneys have to bill their clients more. The medical providers have no control over the relationship or the manner by which that contribution claim is handled. One of the things that could happen, and I think it is in this case, is you take an assignment. You don't want to get through these signatures. I'm sorry? The act prohibits that. Well, I think it comes down to that too. How do you get rid of it around those words? Because what Section 21 has been around for long before the Workers' Affordable Care Act was to protect a worker's disability benefits from his or her creditors. Right? Wonderful policy. Then you get the Workers' Affordable Care Act. And again, it is sub salientio that you think the legislature accomplished this change because you're saying this amendment to the Workers' Compensation Act not only gives medical providers a direct action against insurance companies, but now we have to assume that through this amendment that the legislature meant to affect the assignability. And so now we should disregard those cases and find, although there's no legislative history to indicate this, that the legislature meant that now workers can assign to medical providers their right to receive these payments. Hang on a second. We're not making a claim for any worker's disability payments. What I believe the legislature does very clearly is it separates the parties to which certain things are entitled. The worker has been or always will be entitled to their disability benefits, although interestingly enough under Section 8.2e we can now assume that if the worker doesn't pay, if the insurer doesn't pay the doctor and there's a settlement and the worker doesn't pay, now you can see the worker. Because the settlement includes, here's your lump sum for your past medical care. Right. Well, take a look at these particular cases because these cases highlight the reason why Section 21 doesn't apply to medical payments. These cases say, here's your lump sum, $167,000 in one case. I've forgotten the amount in the other. Okay. Plus, and that's supposed to cover everything for your disability and if you have future medical needs, fine. Plus, we will pay all the reasonable and necessary medical expenses for bills which we have received up through the day of the settlement agreement. Okay? Now, is that the worker's money to which the worker is entitled and cannot even assign to the medical providers under Section 21? No. Section 21 applies to the disability payments. Has any court come to that conclusion? A bankruptcy court and recently a United States District Court in a case called In re Elena Hernandez. I'm sorry, you said Judge Alonzo? It was decided in the last month and as a result it did not make our briefs. But I want to answer your honest question. We have had some of the circuit court judges say Section 21 doesn't apply in circumstances like this. We've had others that say that it did. It came up in the bankruptcy context because what you had is unfortunate circumstances sometimes before the settlement was effectuated, sometimes after. But a worker would get a settlement and would declare bankruptcy and would say my entire settlement is an exempt asset under Section 21. And we challenged that exemption. Judge Cox found that our challenge to that exemption was valid. But this had an assignment. So you're saying the worker could assign the right to payment to the medical provider? The right to payment that we're taking the assignment on is the right to get, is the right to directly prosecute that separate agreement in the settlement agreement that they would pay all reasonable and necessary medical bills. But you're saying you don't need the assignment, that you have a private right of answer. The reason we took the assignment in that case was to assert the Consumer Fraud Act claim because clearly the patient thought if he signed the workers' comp agreement, he was done with everybody. And he's not done with everybody. The medical providers can still sue him. The medical providers don't want to sue him. The medical providers say we won't sue you if you give us your right to enforce your settlement agreement for our benefit. And the settlement agreement provides that the medical providers in both cases are intended beneficiaries. So the only reason you really have to tinker in Section 21 is to deal with, to answer Justice Simon's question, my ardent attempts to find a way to get attorney's fees when things drag out this long. Because if the injured worker was, in fact, defrauded into signing a document that is communicable because it's 2018 and none of those reasonable and necessary expenses have been paid, that worker, if he had the resources, could bring a Consumer Fraud Act claim. He's a consumer. These were goods and services. And he would be entitled to attorney's fees. So with respect to Section 21, all we want is the worker's right to enforce the settlement agreement. We don't want an assignment of the worker's right to his disability benefits. But the assignment didn't say that. I mean, the assignment said, I hereby assign to you all my rights, title, and interests, blah, blah, blah. It wasn't limited to. What was the general assignment? You're saying that the word assignment is in the statute different from what was assigned under the claim. You know, I have to look at Section 21 because I'm not sure that Section 21 uses the word assignment. Do I have it right here? I think it's, forgive me. No, the first word in Section 21 is assignment. You're right. I apologize. So the document that we had Mr. Martinez sign does say assignment. And what he is assigning is his rights, title, and interests, rights, obligations, and responsibility in the settlement agreement, which we define as the contract. Right. In the settlement agreement. In the settlement agreement. Right. It wasn't that portion of the settlement agreement by which the employer obligated itself to pay promptly the outstanding medical bills to date. Well, he's already paid the $163,000, so there's no way that you can construe that as us taking an assignment to enforce the right to payment that's already been paid. We weren't, I mean, the real lawyers. Yes, Justice? Nobody is in the business of writing workers' comp policies. And has been, I think, for a hundred years. They sell their policies to employers. That is correct. They get paid for those policies. That is correct. They write the policies. That is correct. The policies say to the boss, don't pay any of these bills. We'll do it. That is correct. And by the way, I think we've alleged it. The Illinois Department of Insurance approves the form policies, the form insurance policies that it allows the companies to write. There are no surprises here. There might have been a surprise in 2006, but in 2009 when Liberty Mutual went around to their employers and said, how about me? They understood what they were getting into. So Liberty Mutual has said in its own policy that it wrote, it was approved by the Department of Insurance, we're going to pay those taxes. Correct. We will be primarily responsible. And then in Part 4 it says, and you don't make any payments, because if you do, they're voluntary and don't look to us for indemnification. Thanks, Bill. With respect to the Cairo case, I have not yet had the opportunity to describe to you why I think Judge Sherlock Erd in finding with respect to the settlement agreement that Liberty Mutual was not a party to the settlement agreement. There are a number of ways to look at it. Number one, Liberty Mutual and their lawyers are right on the settlement agreement. Number two, Liberty Mutual are the ones writing the checks. And number three, as I cited the law to you, when you have a disclosed agent who has in fact accepted responsibility to pay on behalf of the principal, that disclosed agent is primarily liable. So that covers why we should be proceeding against both the employer and the insurer with respect to the settlement contract. Judge Sherlock found that we could proceed under Section 155. In the absence of some clarification, I fear that we will be told that Zurich now prohibits that. So there is a pen in 155? There is a pen in 155. When we refile, based on this Court's ruling on the available clauses of action, we will refile including the 155 claim. Yes. Now, Judge Sherlock dismissed the statutory duty claim against Liberty Mutual, but not against the employer. And we had a claim for contract implied in fact, which was voluntarily dismissed. And as a result, there is nothing for the Court to consider in that case. It does arise in the 51 case. Yes. If you have any other questions... The 51 case insurance policy is in the record. Yes. And by the time you give me a chance for a minute's worth of rebuttal, I'll tell you where in the 50 case we quote from it. But in the 51 case, it is literally an exhibit to the third amendment complaint. Okay. Thank you very much. Thank you. Good morning again. May I please have support? Yes, counsel. Thank you for the opportunity to argue this matter. I know neither party had actually requested oral argument. And so, in trying to prepare, I was trying to figure out what issues the panel may be interested in hearing about. So, obviously, from our questions to Mr. Vandell, it's why Liberty, who's writing all these workers' comp policies and prohibiting the employer from making any payments and was promised to pay promptly under its policy, isn't doing anything and is resisting efforts by these medical providers to recover for services they've earned. Right. Under the Workers' Compensation Act, the medical services that are paid for are the ones that have been found to be reasonable and necessary. I think you'll find in the pleadings in both of the cases that they're not claiming, the plaintiffs in either case are claiming that none of their bills were paid. Under the act, I mean, the act provides that, and I think this is in the allegations in both complaints, that if the insurance carrier does not notify the medical provider that the detail provided in the medical bill submitted is insufficient, that's it. And both complaints allege, unless I'm mistaken, that Liberty never advised Marco Medicals in either case that its bills were insufficient. And then if you go and you review our answer, in the file we've made denials of the material allegations in the complaint. So it's kind of hard because in this situation you really don't have any factual development of what the facts actually are. We have to assume that's true. I mean, for the purposes of this appeal, we have to assume the allegations of the complaints are true and that Liberty has not notified Marco Medicals that its bills contain insufficient detail. Right. And so then the other layer of that is within the Workers' Compensation Act, the bill still must be reasonable and necessary, the treatment needs to be reasonable and necessary. So while there may or may not be an issue as far as whether that bill contains all the data that's necessary to pay it, that treatment that was provided still needs to be something that is found by commission. But the cases were settled. So Liberty, if it's not on the settlement agreement, is at the table because the employer cannot undertake to pay a dime unless Liberty approves it. And so the employer enters into a settlement agreement in which it tells the employee, we are going to pay your outstanding medical bills. The employer cannot make that representation to the employee without Liberty's approval. Isn't that correct? Yes, yes, John. Okay, so how can Liberty now take the position that notwithstanding that undertaking to pay those outstanding medical bills, we still need to argue about what's reasonable and necessary? That's water under the bridge. Because we've paid all of the reasonable and necessary medical bills. But you didn't say those ones weren't reasonable and necessary. I'm sorry, I didn't hear the question. Did you tell them at any point, oh, we're not going to pay this one because we don't think it is reasonable and necessary? No. And what do you know from that? Well, that's not part of the record as far as, but I think you were asking about the language in the statute that says we're to notify if all of the data requirements are there. There's nothing in the statute requiring that we notify whether there's a dispute. Certainly medical providers find out that. But when the case is settled, okay, the case is settled, the employer, who can't do it without Liberty's approval, says to its employee, we're going to pay outstanding medical bills. The employer, the employee, and Liberty all know what that amount is. Yes. And Liberty says nothing, approves the settlement, and then wants to take the position that some of these bills are not, some of these services were not reasonable and necessary. How can we do that? Because we've paid all of the reasonable and necessary bills. What's the difference between, if you settle, it includes the unpaid bills, right? It includes the reason it says the language and it says the reasonable and necessary medical bills. So if you paid 100% of it, then they would be here, would they? Correct. So they're here. So to me, that's not the, you're not getting at the issue. The issue to me is how does the provider get paid? Okay. Under this statutory scheme, there must be a way for the provider to get paid. What is in your view the way the provider gets paid? The provider gets paid if there is a dispute about reasonable and necessary. So let's take the Well, there always is a dispute about reasonable and necessary. So, again, there's many, many medical bills that are paid as they come in, and there's medical bills in both of these cases. But wait, it's even worse than that because they're not disputing that it's reasonable, they're disputing that it's reasonable and necessary after they've already agreed that it was reasonable and necessary by being part of the settlement. But see, what the agreement in the settlement was, if you look at that language in the settlement, it says that we'll pay all reasonable and necessary bills up to date. So I think what you're transferring that logic is that you're saying, I believe what you're saying, is that every bill that was submitted was reasonable and necessary. If I could give you an example of a situation that happens in your financing, if you would look on the workers' compensation website, they have like a little FAQ section about medical bills and medical payments. For instance, if a medical provider who's billing for physical therapy, they're not allowed to do what is called unbundling and take out the hot and cold tax and charge separately for that. So if you get a bill for physical therapy, you're going to pay the physical therapy bills, but you don't pay for the hot and cold tax because under the statute, you don't pay for that. So it's not that we're set at one point in time, these bills are reasonable and necessary and we agree to pay it and change the mind. You know, living mutually is a changing the position on those bills. And I want to address Your Honor's question about how these bills get paid. If they believe they're not getting what they deserve, what is it? Right. There has to be a way. Right. And so there's been a lot of discussion in the case about what the workers' comp statutory scheme. Counsel has spoken about and I guess referenced the amendments to the act that included direct payment towards medical providers as a workers' affordable care act. I think, you know, the workers' compensation act certainly encompasses more than that. It's been around for a long time and they've taken and addressed many multiple layers of situations that arise. Underlying all of it is to compensate the worker for any work-related injuries and only that employee is entitled to get benefits. So as part of when they made those amendments, the reason to make benefits payable directly to medical providers was to cut out having kind of the middle person having to pay the employee. So for instance, if a responding, if an employer is at the commission and they're having a dispute over whether a surgery was needed and the commission says, yes, the surgery is needed, you have to pay this medical bill, the insurance company doesn't write a check to the medical provider, they write the check to the employee because under the act that's who gets paid. So to kind of give you context, you know, in my interpretation, I think that they made that provision payable to the medical provider to help with those prompt payments, not because they were trying to create certain rights for medical providers, but it was to assist in that process and make it move faster. So go ahead. I'm sorry I'm going on for a long time. I can't answer your question, but I think that you have to look at it because obviously you have to look at the whole act. So I think that the Workplace Compensation Act, that there's many layers that take care of the situation. The more indirect ones that probably are not the ones that you want to hear, but after a settlement is filed, that is approved by the commission, that's the final order in the case, if there are disputes that are still arising with that, at any point in time, there's no jurisdiction on time, that employee's attorney can file a petition for attorney's fees and penalties and raise issues regarding saying that medical payments and interest are under the commission. Yes. The provider and their attorney outside of that, and maybe the attorney for the employee won't do that. I mean, what right? I'm not looking for the right to the employee and the employee's attorney. I want to know the provider. What does the provider do? Are you saying there's nothing the provider can do? There is certainly something the provider does. It is under Section 8.2, subsection E20, that once the case is completed, the provider has the right to go after the employee to collect any unpaid medical. And then obviously, if something like that happens, the employee is going to either third party in their employer, they're going to tender their defense. Just as Mason suggested earlier. Right. I mean, there is definitely a remedy for them directly under that. I think there's many layers of things that can happen as far as the petitioner's attorney filing, both at the commission level for attorney's fees and penalties, and every attorney wants to get attorney's fees, so have no doubt that when those are warranted, these attorneys do file them. And they can also file, as Justice Mason referred to, Section 19G for immediate judgment. And when that's granted, once that's entered, then they get statutory interest for any judgment that's finalized. So what you say today, you're talking about? The petitioner, yes. Petitioner, not the provider. Right, because the providers don't have any specific independent rights here. So the provider doesn't have any independent rights. So all the things you're saying the provider can do is sue the employee. No? Yes. That's the only thing you're saying they can do. Yes. It's the only thing, and it's when they get the interest. Yes, it says in that statute, it says they get the interest and the whatever, the unpaid medical bill. The employee recovers the statutory interest payable to medical providers under the Workers' Compensation Act? Everything that's due and owing to the medical provider when it's reduced to an award gets paid to the employee. And my understanding has been the employee pays the medical provider what's going to them. To short-circuit it then, the employee assigns the right to that lawsuit to the provider so that the employee's lawyer doesn't have to do it, but the provider steps in those shoes as if it was the employee so that the right attorney with the information can go ahead against the provider coming against the insurance company. That comes up to one of the issues in the case of that assignment, which I believe my position is the Act very clearly states in Section 21 that there is no assignment. Well, it depends on what assignment it's referring to. There can be many types of assignments, and I think counsel is trying to differentiate the assignment in the Act from other types of assignments. So how do we interpret what that assignment is referring to? Well, the Act does say that it prohibits any assignment, and then when you look at the assignment that's in the record on appeal, it is a very broad assignment. So I think counsel's argument about what the assignment is doesn't really match what the documentation in the record is because the language in it is broad and says that it's defining any and all rights. So that's not really an issue because it's very clear what that assignment says. It just takes a third degree of disagreement. Well, I mean the language though in the assignment says that... Well, they can't be assigned something that they're not allowed to pursue, but even if it's overly broad, that doesn't mean that they have a lesser right to part of it. You know, it can be overly broad, but within that, they do have an assignment that they can pursue. I guess the way that I interpret the Act is that Section 21 prohibits all assignments of a final award and that this assignment agreement assigns the right to the Workers' Compensation Act and it doesn't delineate only for the purposes of, you know, X, Y, and Z, only for the purposes of pursuing this particular case. I think that would be a different issue. But what Mr. Mandel is saying is he didn't assign his final award. He got the lump sum payment and the settlement agreement contemplated that the medical providers would be paid by the employer. So we're not taking anything that was payable to the employee under the final award. We're accepting an assignment of what the employer agreed to pay the medical providers. And when I say the employer, I mean Liberty agreed to pay medical providers. So how does that assignment, if that's what it was, contravene the Act's prohibition against assigning the award? The employee didn't assign the award. Well, the medical benefits are part of the award. I mean, all of the, that's the medical, the whole reason why the, that's part of the benefits of the Workers' Compact. So the entire settlement contract is the award. And this assignment agreement says that hereby agrees to assign all right, title, interest, delegates, and delegates all her obligations, responsibilities, and duties in the contract to the assignees. And I understand your point that you're saying that perhaps this individual did not have anything else to assign, but then that should be documented in the agreement. Here it's saying all. And so I think just on its face, it contradicts the Act. And I think that you have to be careful in these situations because who knows what kind of, you know, Nobody has to be allowed. I mean, when you say all, all includes less than all. So if something's over the grudge, that doesn't mean you can't force it to the extent that it's permissible under the statute. And there seems that what the specific words there point to a different type of assignment than what we're talking about or Cass was talking about in terms of his ability to obtain relief. And, you know, again, this whole scheme, did the legislature somehow just forget about the providers and what would happen to the providers if they didn't get paid? No, they did not. Because they made that subsection E20 where once the case is concluded. But they're saying that E20 is not a shortcut. I mean, it's contrary to the whole idea of this scheme, which would make things quickly and easily and so forth. So, and again, you said you have to look at the whole thing. So, I mean, it's a difficult issue. I think the issue's been decided in Zurich, Your Honor. We don't know what Zurich is, as you know. Yeah, correct. And I think that the burden is on the appellants to show that there's good cause or compelling reason not to follow Zurich. And that in their reply brief they had cited people versus Espinoza. And in that one they're discussing what good cause is. And it has to include decisions that are unworkable or badly reasoned. And I think that their decision, they very thoroughly went through the act. I think they have a different opinion on that. Sure. It happens all the time, as you know. Oh, yes. That's why we have a Supreme Court. So, it doesn't, you know, the arguments they hear may be a little different. And the situation's different for sure than the class action that was brought in Zurich. So, there's different things at play in this case and related cases. And then, of course, just since you guys issued oral argument, another panel decided the other case, and that one was the Medicos Pain and Surgical Specialists versus Travelers Indemnity et al., 2018. Justice McBride? I'm sorry. Justice McBride? Yes, yes. And in that one, it was a promissory estoppel issue. In that one, they agreed as far as the Section 8.2b that there was, you know, private, no private write-backs. Let me ask you, is it Liberty's position that in both these cases, Liberty has paid all reasonable and necessary medical expenses for each of these workers within 30 days so that no interest is payable? That we've paid all reasonable and necessary within 30 days? I can't say that because I don't know that all of these both were within the 30 days. Okay. Let's talk about it. Liberty's saying just because somebody submits a bill doesn't mean the amount is reasonable and necessary. It might have all the detail that it's required to have, but if, for example, for physical therapy, we're being charged for the therapy plus the hot and cold tax, we don't pay for the hot and cold tax. I get that. But unless Liberty is saying we've paid everything within 30 days and we owe no interest, there is some interest payable to the medical providers. And so how is it when they have the statutory rights for interest that they recover? How do they do that? I disagree as far as they have a statutory right for interest. I believe that the statute provides that they get interest as part of the prompt payment provisions, but I disagree that they have an independent right. Maybe I phrased that. The statute provides that interest is to be paid. Correct. How do they get it? They get the interest. The insurer is to pay the interest when they know that they're paying the bill late. And I don't believe you can do it. Okay. So, you know, I didn't come here prepared with what was paid when we didn't do anything. It's a hypothetical. Okay. But it's a hypothetical, is it? And they didn't. And so I understand, because your concern is you're saying you guys, the settlement was entered into and that Liberty Mutual was responsible for paying and that you think that we switched positions and didn't. But when these contracts are entered into, I mean, it's not just a hey you thing where, you know, the employer returns a comment saying, hey, will you settle for X amount. I mean, the petitioner, you know, it's not, it's something that they work on and they negotiate all of the medical bills to compile together and the parties know what's been done. So I would submit that I would believe in this situation, but, you know, I don't want to misrepresent it, but I would believe that everybody has sat down and that the employer's attorney has put together all those bills and know what they are. They know what has been paid. If they see a bill that hasn't been paid and they, you know, either want that in there or verbally talk to the employer attorney and say, hey, this bill didn't get paid. This needs to be done either before we settle it or then afterwards. Okay. Use our hypothetical. Our hypothetical is there's a settlement and afterwards the provider says interest is due. Okay. Whatever interest is due, that one. If there's interest due and it's owing, Liberty Mutual can still pay it. And then what? I mean, that's the allegation. That's the allegation. That's the allegation. It is not to pay. So they have to do something. All right? What is it? After the case is over and... After what case is it? After, you mean after a final decision. You're asking what the case is. Yeah, so what's the compensation? Okay. So there's a settlement. So you and him paid the interest. They pay their patient for the interest and they're going to either third party And you're saying they can't, the employee can't, or the patient can't assign that suit to them so they'll just sue you directly and go out the room. That's what the compensation is. So that makes the interest payable not by the employee but by the carrier. Right? Yes. Okay. So how is it that the medical provider has a cause of action against the employee for interest? The CSU doesn't render the employee liable for interest. I mean, that's what I said. The problem is it's interest that's owing on these medical bills. Let's say Liberty has paid them 60 days late consistently. And so interest keeps accruing and Liberty's not paying it. Case is settled. The medical providers are still owed this interest. And what you're saying is the medical providers should sue the employee. But it's not the employee who owes the interest. It's the carrier under the statute. But the E-20 says that they can sue for medical bills and interest. Sue the employee. The employee who doesn't under the statute have an obligation to remit interest. What's that cause of action? Well, I mean, I don't know that you need a separate cause of action because it says that the employee shall be responsible for the payment of any outstanding medical bills as well as the interest awarded under subsection D. But there's no separate award of interest. Well, because the workers' compensation settlement contract operates as an award when it's approved by commission. Right. I don't think that's referring to interest on medical bills. You don't? Okay. That's the way I interpreted that. Yeah, because it's referring to D, which has the interest section. And again, making the interest payable to the medical provider is a part of the prompt payment provision. And so it's not, I'm trying to think how to even explain. Okay, so the medical bills, I mean, the employee is never getting that money, like I say, in their pocket because it's getting paid for. So really the interest is part and parcel of that. So I would say under E-20 that same principle applies. Like I understand you're trying to parse out this interest as a totally separate entity, but it's not. It goes together because it says under that subsection E-20 that they can sue for both. Well, but we all agree there's only one party that has interest, right? Right. The provider. Right. So you're saying the provider has to go after the employee who has to bring in liberty, rather than, since the statute says that that interest is due to the provider, why couldn't they just sue? And the employee can't really bring in liberty because it's the employer that has the conscience of liberty. Or bring in the employer. So they bring in, so this is like Tinker's Chevreuse to Chance. I mean, really, how are they supposed to get their interest? Well, they, by suing under, if you're asking what a remedy would be in a situation like this, it would be suing under subsection E-20. And I mean, that's what the statute, I guess my point is is that when you're looking at whether there's an applied private right of action, in addition to the, you know, whether the entity is in the class, you know, which is what Zurich didn't analyze any farther on those factors. So what I wanted to make sure, you know, that I pointed out to you guys is that there is a remedy. And I understand that, like, you know, you're not happy with the remedy, but it is set up in the statute. I think we're trying to figure out whether your interpretation of the legislation makes the legislation almost impossible or makes no sense. I mean, we're supposed to interpret legislation as though it makes some sense. And what we're trying to figure out is how that makes any sense. Right. So, well, it makes sense that they're allowed to go after the employee for the medical bills and interest, and the employee is going to have some obligation for the interest under the law. Well, do they have, I mean, if it's reasonable and necessary, do they have obligation? That's not the issue. That's not the issue. That's not the issue. And you agree that the statute, the whole idea is to get prop payments, get the providers to provide those services, and one of the hammers used is the interest to get prop payments. And so we're saying, well, that the remedy that you're proposing of being the sole remedy, I assume, is a very slow, burdensome, lengthy process that brings in an unnecessary party, the employee. And the provider is saying is there are alternatives. I mean, they've given us several alternatives in these two cases, which would get to the same spot without having to bring in an unnecessary party, and just bring the party who owes the money in liberty to have that determination made by a court. What strikes me when I hear that is that sounds more like a legislative issue, and that medical providers believe that they're left without a remedy, that then perhaps really what they're looking at is asking the legislature to make additional amendments if they think that there's something incorrect or something that would be more helpful in the act. But as far as our purposes for what's before the court, I think that there is a remedy, and there's no requirement in these cases. I mean, okay. So, and you're looking at whether it's too burdensome, and I don't think that it is too burdensome. Why is it too burdensome to do what it says in the statute, and then they'll, you know, third-party, and just, I mean, many cases have third-party defendants. Many cases get tendered. I don't think the fact that you have to bring another party to a case is a reason to find that it's overly difficult so that, you know, it renders it useless. And then as far as if I could just real briefly say with the breach of contract, I mean, I think it was pretty clear that Liberty Mutual is not a party to the contract, and that, you know, that the trial court was correct in finding that they couldn't pursue against Liberty Mutual as far as the breach of contract. And I think I've addressed all of the points that were in the 3350 appeal, and I would ask that this court affirm the draft. I'm going to ask you the same questions I asked Ms. Randall. Liberty Mutual, it sells workers' compensation insurance. They sold workers' compensation insurance to these two employers in the two separate cases we have. The insurance policies both say to the employer, don't pay any doctor bills, we're going to do that, and Liberty wrote the policies. Those are correct statements? Those are correct statements, Your Honor. And they got paid? Yes, Your Honor. Okay. And I would add that they say, don't pay the medical bills, that we will, but I do disagree as far as counsel's representation that they're prohibited. It's just that if they decide to pay bills, that doesn't mean that their insurance policy will reimburse them for it. Okay. I would just make that comment on his behalf. Thank you. Before you step up, Mr. McDowell, I just want to remind both counsel, we have two cases on the call today, and although they involve the same medical providers and the same insurance company, they involve two different workers, therefore two different policies and two different case records and student case numbers. So I am going to instruct the clerk at the end of your rebuttal to call the second case, and when we do that, really to just summarize, if there are any specific differences that we need to pay attention to in the 5-1 case that would be helpful. Mr. McDowell, your rebuttal. Thank you. I'm going to start where I left off, because the record in this case, the second amendment complaint, which is included in our appendix. The 50 case. I'm sorry? The 50 case. The appendix of pages 26 and 27 alleges the terms of the workers' compensation policies. And it says, every workers' compensation policy issued to employers in the state of Illinois provides the following terms. We, the insurance company, will pay promptly when due. The benefits required are due to the employer by the workers' compensation law. We will also pay the levy. So the relevant terms are alleged. Thank you. Now I'm going to go to the last point counsel was making. You can't read McMahon and come to the conclusion that the policies of the workers' compensation act are fulfilled by creating a relationship where years after the treatment, the doctor should be suing his or her patient. That's not what the system was designed for. That's wholly inconsistent with the policies, and that's not what the statute says. Section 8.2D could not be clearer. Pay directly to the provider. Pay directly to the provider. But as counsel for liberty pointed out, the remedy of the medical provider suing the patient when payment isn't forthcoming is contemplated under section 28. And it might not be the best remedy, but it's the remedy the legislature provided. And maybe the answer to this dilemma lies with the legislature. Well, don't forget that in this case, we have alleged and we have attached the market conduct study. The Oregon Department of Insurance has decided that the interest is the insurance company. They've not only published bulletins with respect to this defendant. They have found that the statute has not been complied with, and they have exhorted Liberty Mutual to institute policies by which the insurance company did pay it. So that's in the first instance. Understand that I want to talk about section E-20, but you can't talk about E-20 without talking about 8.2D, which says that the let's call the payer, the employer, insurer for the time being. Let's call the payer. The payer shall pay directly to the provider, both the bill and the interest. That's the way it's supposed to work. Why is E-20 there? It is a weak incentive, but it is there when, A, the payer does not comply with 8.2D and does not pay directly to the provider, either the bill or the interest. And then there is an award or a settlement. In this case, settlements. And those settlements provide for complete release between employer and employee. So in these cases, I'll talk about the bigger picture. In these cases, if the employee does not settle and get the interest, they have nothing to give the medical providers, and they can't third-party in anybody. They release their claims against the entire world, leaving them naked against the medical providers. Is that a remedy? Maybe, if the money is still there. Please bear with me with respect to the practical realities. The worker gets paid on Friday. The medical provider finds out about the case a month from Friday. The medical provider found out six weeks from Friday. By the throw of a circuit court judge decides that the interest is due, it's not there. I believe it was Justice Henry. Maybe it was you, Justice. But as one of you pointed out, the legislature put the burden on the payor, not on the poor employee. If it's not the employee's fault that the bill hasn't been paid and as a result interest is due, talk about, golly gee, passing the buck. You've got an insurance company that delays payment for years and says, you know the interest that the medical provider gets, so get it from the patient. Well, I'm not saying get it from the patient. The thing that everybody knows is that it's a process. You're saying you've got to go to the patient in order to get to the payor. In a settlement, you'll never go to the payor. In a settlement, the employee gets their money. If the bill hasn't been paid or the interest hasn't been paid, each one says, yes, now you can start billing and collecting from your client. Why does it say that? In my view, it is to provide petitioner's attorneys with appropriate incentive to make sure that these bills and the interest is resolved, either in the settlement process or otherwise, so that the worker is not left with a situation where they have nobody to turn to and they're still liable to the medical provider. And so wouldn't that then speak to a practice of including in a settlement agreement the specific amount of bills outstanding and the interest that's owed, so that the carrier can't say, oh, we paid off reasonable necessary medical expenses and we don't owe any interest. I don't know who wrote those two settlement agreements. The wording is identical, and it is my position that the wording is chimerical. That's chimerical, an absolute mirage. Exactly to Justice Mason's point. If they said, here's what we'll pay and here's what we won't pay or here's what we think is reasonable and here's what we think isn't reasonable, and the employee says, you're right, that's not reasonable, then you go down the E-20 path, but that's not what they did. They had the right to adjudicate what was reasonable and necessary in front of the permission. They waived the right to adjudicate what was reasonable and necessary in terms of medical bills, and they said, we'll pay it. And then they made themselves the arbitrator instead of the commissioner as to what was reasonable and necessary. I'm sorry if that's wrong. But my question was, knowing that possibility, a reasonable attorney for a workers' compensation claimant, petitioner, would say, I've got to get it in writing. I've got to get in writing what the amount of the outstanding bills is and what the amount of interest due on those bills is. Yes. If petitioner's attorneys were completely assiduous. I mean, you can't avoid the problem. If petitioner's attorneys had all the appropriate incentives and were appropriately assiduous and protected the medical provider's rights as much as they were willing to protect their client's rights. No, no, no. What I'm saying is the attorneys in their own client's interest, the worker's interest, knowing that the worker can be sued for the unpaid bills plus interest, wouldn't a reasonable workers' compensation petitioner's attorney say, I've got to lay this out? I don't think you can blame the petitioner's attorneys in these two cases. They wanted to get their months on payment, they wanted to get their 20%, and they wanted these cases, which had lingered for two and three and four years, done. And if the insurance company was saying, don't worry, we'll deal with the doctors down the road, it's not your problem anymore, they were perfectly happy to do that. What you sometimes have in the real world is the payor trying to middle or divide the worker from the medical provider. Wait a second, you weren't hurt that bad. How come they're treating you so much? I'm not going to pay you for your disability unless you compromise your doctor's bills. I can't compromise my doctor's bills. I'd be liable for it. Here, I've got a great idea. Pay for your disability and we'll deal with the insurance company. We'll deal with the medical providers in this vague, amorphous, chimerical way. And that's what you have in these two agreements. It would have been great if they had gone to the commission. And you know what they could have done? They could have settled with the disability part and reserved for the workers' compensation commission in the question of what was reasonable and necessary. They didn't do that. They wrote a document that said, we'll get around to it. They never got around to it. And they said, if we think it's reasonable and necessary, if we didn't think it was reasonable and necessary, who's the arbiter? Can you comment that the agreements here are pretty much boilerplate, typical agreements that are used for settlement and workman's compensation? With respect to the wording of the issue, I have seen them in more than these two cases. I have not seen them across a broad spectrum. And I do not pretend to be a petitioner's attorney. And I only have a limited number of medical provider clients. Having seen these come in, and it's not just Liberty Mutual, because I've seen them from other companies, I thought that some clever somebody decided, here's how we skirt. Because you haven't heard of it. Right. Right. We need nothing to say about it. The medical provider said nothing was wrong with it. So, just to clarify a few points, what we allege was that prior to the settlement, all of the medical bills were paid directly to the providers. Checks were not cut to the patient. The only check that was cut to the patient was after the settlement. We allege, and it's a well-pleaded fact, that some of the bills were paid and some were not. Many of them were paid after the settlement agreement, but not all of them. So, you have three components of damages in the 50 case. You have unpaid medical bills. You have accruing interest on unpaid medical bills. And you have interest on paid medical bills that were paid late. And there's three different components. Yeah, I think I made the point with respect to third-partying in the insurer after the settlement. Once the payor settles with its employee, the employee gives up all of its rights. There's not going to be more tinkers-to-evers-to-chance. It's over. There was reference to the Travers case that was recently decided. I read the opinion, of course, and it said, well, there was no effort to distinguish that case from Zurich. I have made that effort, and I can wait until the 51 case, where I think it's more properly raised, to do so. Excuse me, did you give us a citation for the case in front of Judge Cox? Oh, so it's preliminary. Elena Hernandez. Could you just submit it? Could I submit it? Yes, absolutely. Thank you, Marion. Okay, just submit it. So, Judge Cox's decision was a year ago. It was appealed to the district court. The district court just decided. And I will submit that. Your Honor, thank you very much. Thank you, Mr. Hanna. I'm going to stand right there. I'm going to ask the clerk to call the next case.